UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

TALITHA J. GOREA,

                    Plaintiff,

v.                                                              6:12-CV-0854
                                                                (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                    Defendant.

───────────────────────────────────────────

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                          KAREN S. SOUTHWICK, ESQ.
  Counsel for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202


U.S. SOCIAL SECURITY ADMIN.                BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

        Currently before the Court, in this Social Security action filed by Talitha J. Gorea

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings.

(Dkt. Nos. 11, 12.)  For the reasons set forth below, Plaintiff's motion is granted and Defendant's

motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on March 14, 1976. Plaintiff has a master's degree in education and is able to communicate in English. Her most recent employment was in teaching. Generally, Plaintiff's alleged disability consists of pain in her back, arms, hands and legs, arthritis, asthma, drug and alcohol dependency, bipolar disorder and depression. Her alleged disability onset date is October 1, 2009, and her date last insured is March 31, 2014.

### B. Procedural History

On April 20, 2010, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 9, 2011, Plaintiff appeared at a video hearing before the ALJ, Elizabeth W. Koennecke. (T. 25-42.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on July 26, 2011. (T. 11-24.) On March 13, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 4-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 17.) Second, the ALJ found that, during the relevant time period, Plaintiff's polysubstance abuse and bipolar disorder were severe impairments, but that Plaintiff's physical impairments were not severe. (T. 17-18.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed

impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18-19.)  The ALJ

considered Listings 12.04 and 12.09.  Fourth, the ALJ found that Plaintiff has

> the residual functional capacity ["RFC"] to perform a full range of
> work at all exertional levels and understand, carry out, and remember
> simple instructions.   However, based on all of [Plaintiff's]
> impairments, she is markedly limited in responding appropriately to
> supervision, co-workers, and ususal work situations and moderately
> limited in dealing with changes in a routine work setting.  In the
> absence of her substance abuse disorder, [Plaintiff] retains the [RFC]
> to perform a full range of work at all exertional levels and understand,
> carry out, and remember simple instructions; respond appropriately to
> supervision, co-workers, and usual work situations; and deal with
> changes in a routine work setting.

(T. 19-22.)  Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work.  (T.

22.)  Sixth, the ALJ found that, considering Plaintiff's age, education, work experience and RFC

based on all of her impairments, including the substance abuse disorder, there are no jobs that

exist in significant numbers in the national economy that Plaintiff can perform.  (T. 23-24.)

Seventh, and finally, the ALJ determined that, if Plaintiff stopped the substance abuse,

considering her age, education, work experience and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  (T. 24.)

II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

        A.      Plaintiff's Arguments

        Plaintiff makes five separate arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ failed to afford controlling weight to the opinion of

her treating physician, Dr. Tabrizi.  (Dkt. No. 11 at 8-12 [Pl.'s Mem. of Law].)  Second, Plaintiff

argues that the ALJ failed to properly weigh the opinions of State agency medical consultant, Dr.

Tzetzo and consultative examiner, Dr. Noia.  (*Id.* at 12-14.)  Third, Plaintiff argues that the ALJ

failed to reconcile her RFC determination with the opinion of Dr. Noia.  (*Id*. at 14.)  Fourth,

Plaintiff argues that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility. (*Id*. at 15-16.) Fifth, and finally, Plaintiff argues that the ALJ's determination at step five of the sequential analysis was not supported by substantial evidence. (*Id.* at 16-17.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (Dkt. No. 12 at 5-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 11-13.) Third, and finally, Defendant argues that the ALJ's determination at step five of the sequential analysis is supported by substantial evidence. (*Id*. at 13-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d

Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the

Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041

(2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520,

416.920. The Supreme Court has recognized the validity of this sequential evaluation process.

*See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as

follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). Pursuant to the Contract with America Advancement Act, "[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing Pub.L. 104-121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c (a)(3)(J))). Therefore, the ALJ must decide "[t]he critical question" of "whether . . . [the claimant would still be] disabled if [she] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [ the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). It is the claimant who bears the burden of proof on the issue of whether her drug addiction or alcoholism is material. *See Cage*, 692 F.3d at 123-125.

## IV.     ANALYSIS

### A.     Whether the ALJ Erred in Failing to Apply the Treating Physician Rule When Weighing the Opinion of Dr. Tabrizi

After carefully considering the matter, the Court answers this question in the affirmative

generally for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 11 at 8-12 [Pl.'s

Mem. of Law].)  The Court would add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating

physician's opinion when (1) the opinion is well supported by medically acceptable clinical and

laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial

evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2);

*Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x

632, 633-34 (2d Cir. 2012).  When controlling weight is not given, the ALJ should consider the

following factors to determine the proper weight assigned to a treating physician's opinion: (1)

frequency of the examination and the length, nature and extent of the treatment relationship; (2)

the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole;

and (4) whether the opinion is from a specialist.  *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*,

221 F.3d 126, 134 (2d Cir.2000).  Regulations require ALJs to set forth his or her reasons for the

weight assigned to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.

The record includes treatment notes from psychiatrist, Firooz N. Tabrizi, M.D., for the

period May 2010 through January 2011.  (T. 284-285, 538-539.)  In a note transcribed on May

24, 2010, Dr. Tabrizi confirms that he began treating Plaintiff on November 6, 2007 and that he

last saw her on May 11, 2010.  (T. 284-285.)  Dr. Tabrizi notes that Plaintiff previously drank

alcohol and abused cocaine for some years but that "she recently stopped doing these things."

(T. 285.) Dr Tabrizi diagnosed Plaintiff with generalized anxiety disorder, mood disorder, and

major depression. (*Id.*) Dr. Tabrizi notes that Plaintiff cannot relax, her mind races, and that she

gets agitated despite taking her medication regularly. (*Id.*) At that time, Dr. Tabrizi noted,

Plaintiff was taking Xanax, Cymbalta and Seroquel. (*Id.*) Dr. Tabrizi continued to record in

November and December 2010 that Plaintiff does not abuse drugs or alcohol, and that Plaintiff

remained on the same medications. (T. 538-539.) On August 28, 2010, Dr. Tabrizi completed

an employability assessment of Plaintiff wherein he opined that she is very limited in her ability

to understand, remember and carry out instructions, make simple decisions, interact

appropriately with others and maintain socially appropriate behavior without exhibiting behavior

extremes. (T. 322-323.)

Also in the record is a psychiatric evaluation report from consultative examiner, Dennis

M. Noia, Ph.D. (T. 286-290.) Dr. Noia examined Plaintiff in June 2010. Dr. Noia noted that

Plaintiff had not abused drugs or alcohol since October of 2009, after which she was under house

arrest related to DWI. (T. 287.) Plaintiff was diagnosed with Bipolar Disorder, not otherwise

specified, and alcohol and cocaine abuse, in early full remission. (T. 289.) Dr. Noia opined that

Plaintiff appears to be capable of (1) understanding and following simple instructions and

directions, (2) performing simple and some complex tasks with supervision and independently;

(3) maintaining attention and concentration for tasks; (4) regularly attending to a routine and

maintaining a schedule; (5) learning new tasks; (6) making appropriate decisions; and (7)

interacting moderately well with others. Dr. Noia noted, however, that Plaintiff has some

difficulty dealing with stress. (*Id.*)

Finally, the record contains a July 2010 assessment by State agency consultant, Dr.

Tzetzo. (T. 309-311.) Dr. Tzetzo opines, based on his review of the reports of Drs. Noia and

Tabrizi as well as Plaintiff's activities of daily living, that Plaintiff is able to perform simple jobs in a low contact setting. (T. 307.) In his mental RFC assessment, Dr. Tzetzo indicates that Plaintiff is moderately limited in the following areas of functioning: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) the ability to sustain an ordinary routine without special supervision; (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to interact appropriately with the general public; (6) the ability to respond appropriately to changes in the work setting; and (7) the ability to set realistic goals or make plans independently of others. (T. 309-310.)

According to the ALJ, Dr. Tabrizi's opinions regarding Plaintiff's RFC were given little weight because "they are not supported by his treatment notes which primarily document [Plaintiff's] complaints and statement that she was staying clean and sober" and that because Plaintiff "has not stayed clean and sober since her alleged onset date, . . . any opinions formed relying on these untrue statements are not entitled to any weight." (T. 22.)

In the first instance, the ALJ's assertion that Dr. Tabrizi's opinion is based on Plaintiff's untrue statements and therefore is not entitled to any weight is both legally and factually erroneous. First, there is no evidence in the record supporting a conclusion that Plaintiff was using drugs or alcohol in 2010, which is the time period referenced by Dr. Tabrizi's treatment notes. The ALJ asserts that "[i]n 2010, [Plaintiff] was under investigation secondary to drug abuse and was on house arrest during the summer and fall of 2010," citing a September 9, 2010 treatment note by Dr. Oleg Dulkin referring to Plaintiff's 2009 DWI charge. (T. 21, 531.) Dr.

9

Dulkin's notes from this same visit reflect that Plaintiff has been "free of drugs for the last ten months." (T. 531-532.) Moreover, it is error to fail to give controlling weight to the opinion of a treating physician because it is based on the physician's reliance on the subjective complaints and reports of his patient, which the Second Circuit has called "an essential diagnostic tool." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").

Accordingly, remand is necessary so that the ALJ may reevaluate and adequately explain the weight assigned to Dr. Tabrizi's opinion.

### B. Whether the ALJ Erred in Failing to Properly Weigh the Opinions of Drs. Tzetzo and Noia

After carefully considering the matter, the Court answers this question in the affirmative for the following reason.

Unless controlling weight is given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295

(W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, the ALJ assigned little weight to the opinion of Plaintiff's treating psychiatrist, albeit without first properly applying the law before determining the appropriate weight. Therefore, the ALJ was required to explain the weight assigned to the opinions of Drs. Tzetzo and Noia.

Here, the ALJ explains that she has given "weight" to the opinions of Drs. Tzetzo and Noia. (T. 22.) Plaintiff argues that the ALJ erred by failing to state the specific weight given to these opinions. While it is clear from a review of the ALJ's determination that she assigned significant weight to the opinions of Drs. Tzetzo and Noia, she did so after having disregarded the opinion of Plaintiff's treating physician without a factual or legal basis to do so. Moreover, it is clear that Dr. Tabrizi's opinion differs in material respects from the opinions of Dr. Noia and Tzetzo. For example, while Dr. Noia noted that Plaintiff's attention, concentration and memory were intact, Dr. Tabrizi opined that Plaintiff is very limited in her ability to understand, remember and carry out instructions. (T. 288, 323.) Dr. Tzetzo, after reviewing the opinions of Drs. Tabrizi and Noia, opined that Plaintiff is moderately limited in the ability to maintain concentration for extended periods. (T. 309.) Accordingly, remand is necessary so that the ALJ may reevaluate the opinions of Drs. Tzetzo and Noia after properly applying the treating physician rule as it relates to the opinion of Dr. Tabrizi.

> **C.** **Whether the ALJ Erred in Failing to Reconcile Her RFC Determination With the Opinion of Dr. Noia**

After carefully considering the matter, the Court answers this question in the affirmative for the following reason.

11

Plaintiff argues that the ALJ's failure to reconcile Dr. Noia's opinion that Plaintiff appears to be having some difficulty dealing with stress with her RFC determination is error. Plaintiff cites caselaw supporting remand on this basis. However, in the cited case, unlike here, the consultative examiner noted other limitations in addition to problems dealing with stress, such as problems with attention and concentration and problems in dealing with others. *See Sweat v. Astrue*, No. 08-CV-1108, 2011 WL 2532932, at *6 (N.D.N.Y. May 23, 2011). Here, Dr. Noia did not note any other limitations in his medical source statement other than "some difficulty dealing with stress." (T. 289.) Nonetheless, because remand is necessary so that the ALJ may properly assess the weight assigned to the opinion of Plaintiff's treating psychiatrist, and secondarily to the opinions of Drs. Noia and Tzetzo, the ALJ should also explain her reasons for failing to include Plaintiff's limitations in dealing with stress in the RFC determination.

**D.  Whether the ALJ Properly Assessed Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated in Defendant's memorandum of law, (Dkt. No. 12 at 11-13 [Def.'s Mem. of Law]), but remands so that the ALJ may reevaluate Plaintiff's credibility after proper application of the treating physician rule. The Court adds the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so

12

explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's testimony that her medication makes her tired and that she only gets out of bed three to four or five times per week. Defendant argues that these assertions are inconsistent with the objective medical evidence and other evidence in the record.

To be sure, Plaintiff testified at her May 2011 hearing that since her overdose in the autumn of 2009 she has been very depressed and she feels like she can't function on a day-to-day basis. (T. 31.) Plaintiff further testified that her medication makes her "very, very tired," (*id.*) and that "three to four or five times a week" she is able to get out of bed, (T. 36). In contrast,

13

as noted by the ALJ, Plaintiff reported in February of 2010 that she is able to walk one mile, three times per week. (T. 272.) Also, in June of 2010, Plaintiff reported to two separate consultative examiners that she is able to dress, groom and bathe herself daily. (T. 288, 292.)

Plaintiff also presented inconsistent evidence regarding her drug use. At the hearing, Plaintiff's counsel asserted that Plaintiff has been clean from drugs and alcohol since October of 2009. (T. 30.) Plaintiff's medical records reflect, however, that just weeks before the hearing, Plaintiff tested positive for Hydrocodone, Hydromorphone and Oxycodone, which, she explained, were her husband's medications. (T. 560.) In light of the inconsistencies in Plaintiff's allegations regarding her symptoms, the ALJ was not required to accept her subjective complaints. Accordingly, because Plaintiff's statements are self-contradictory, the ALJ appropriately exercised her discretion in finding Plaintiff credible only to the extent her statements are consistent with the medical evidence. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). However, to the extent remand is necessary so that the ALJ may reevaluate evidence after addressing the treating physician rule, the ALJ should also consider whether her reevaluation alters the assessment of the Plaintiff's credibility in light of the evidence as a whole. *See Balodis v. Leavitt*, 704 F. Supp. 2d 255, 268, n.14 (E.D.N.Y. 2010).

### E. Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 16-17 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can

perform. Instead, the ALJ decided that there are jobs in the national economy that Plaintiff can

perform, relying solely on the Medical-Vocational guidelines. Plaintiff argues that due to the her

extensive non-exertional limitations, as opined by Dr. Tabrizi, the ALJ should have obtained the

opinion of a vocational expert.

At step five of the sequential analysis, the Commissioner can usually meet his burden to

establish that, if a plaintiff is unable to perform his past work, there is other work which he could

perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404,

Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-

6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers

from non-exertional limitations that significantly limit his employment opportunities, exclusive

reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v.

Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is

significantly limited when he suffers from the 'additional loss of work capacity beyond a

negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to

deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606).

However, it is important to note that "the mere existence of a non-exertional impairment does

not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411

(2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, revisit the weight

assigned to the opinions of Drs. Tabrizi, Noia and Tzetzo, remand is also necessary so that the

ALJ may revisit his decision at step five of the sequential analysis after having reevaluated his

RFC determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated: September 10, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge